

DONAHUE dh HORROW

T 310-322-0300
F 310-322-0302

www.donahuehorrow.com

1960 E. Grand Ave., Suite 1215
El Segundo, California 90245

September 17, 2013

**VIA E-FILE**

Honorable Kandis A. Westmore
United States Magistrate Judge
Oakland Courthouse, Courtroom 4 - 3rd Floor
1301 Clay Street, Oakland, CA 94612

  Re: Dana M. Welle v. Provident Life and Accident Insurance Company

To the Honorable Kandis A. Westmore:

  Please accept this letter brief concerning the parties' discovery dispute concerning requests for production of documents regarding Defendant Provident's bonus awards of the claims adjusters and in-house doctor who evaluated Plaintiff's claim and guidelines relating or referring or applicable to NaviLink. The discovery at issue are Defendant Provident's Responses to Requests for Production (Set No. 5) Request Nos. 68, 70, 72, 76 & 79.

  The parties have met-and-conferred in person but have been unable to resolve their differences.

      DONAHUE & HORROW, LLP

      NICHOLE D. PODGURSKI

      BURKE, WILLIAMS & SORENSEN, LLP

      KEIKO J. KOJIMA

1

## JOINT DISCOVERY LETTER BRIEF

Plaintiff Dana M. Welle, D.O. ("Plaintiff" or "Dr. Welle") and Defendant Provident Life and Accident Insurance Company ("Defendant" or "Provident") hereby submit their Joint Discovery Letter Brief as required by the Standing Order for Magistrate Judge Kandis A. Westmore, as to Plaintiff's Requests for Production (Set No. 5) Request Nos. 68, 70, 72, 76 & 79.The specific requests and Defendant's responses are attached hereto as Exhibits "A" and "B".

## FACTUAL BACKGROUND

Plaintiff's Complaint contains causes of action for (1) breach of an insurance disability policy issued by Defendant Provident to Dr. Welle, an obstetrician/gynecologist; and (2) breach of the implied covenant of good faith and fair dealing. Plaintiff's Complaint alleges that Dr. Welle is disabled under the terms of the Policy following a bicycle vs. car accident occurring in 2003 which left her with severe traumatic injury to her left arm. Plaintiff claims that despite the surgical intervention that follow, including surgery in 2009, she experienced increased pain, numbness and weakness in her left hand and forearm. She further claims that her symptoms worsened over the years despite activity modification, medications and splinting, and that she turned to her own occupation insurance disability insurance carrier and filed a claim for total disability benefits. Plaintiff alleges that Provident unfairly and unreasonably denied Dr. Welle's disability insurance claim on March 20, 2012, based upon Provident's investigation and surveillance of Plaintiff.

Provident maintains that its denial was proper. Provident maintains that at the time Dr. Welle had her March 2009 surgery, she was already planning for a career change and was attending law school. Plaintiff further maintains that in April 2009, the partners of her medical group had disbanded the practice. Provident contends that it terminated Dr. Welle's disability claim after its thorough investigation and review, which included information that she was engaging in open-ocean stand up paddleboarding at the same time her doctor represented that she was restricted from using her left upper extremities.

### PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS (Set Five)

### REQUESTS FOR PRODUCTION NOS. 68, 70, 72, 76:

These requests seek the production of documents that: "reflect, refer or relate to bonus awards, including but not limited to the performance rating and percent of bonus awarded" of the claims adjusters and in-house doctor who evaluated Plaintiff's claim from 2008 through the present.

Provident has identically objected as follows:

### RESPONSE TO REQUEST FOR PRODUCTION NO. 68, 70, 72, 76:

Provident objects to this request on the grounds that: (1) it is overly broad in time and scope and potentially unduly burdensome given its breadth; (2) it is vague and ambiguous as to the phrase "ALL DOCUMENTS which reflect, refer or relate;" (3) it seeks information that is not relevant to the claims or defenses of any party to this action and it is not reasonably calculated to lead to

2

the discovery of admissible evidence; (4) it seeks confidential and/or proprietary business records; and (5) it seeks personal information of a third party who has a right to privacy, and as to Massachusetts employees, it seeks information and materials protected by the Massachusetts Privacy Statute (Mass.Gen.L.c214, sec 1B) which has been broadly interpreted by Massachusetts case law to protect disclosure of private facts about an employee, as well as violates third parties' privacy rights under California law.

## Plaintiff's Position:

California Insurance Code section 790.03, subdivision (h) prohibits insurers from "knowingly committing or performing with such frequency as to indicate a general business practice" a variety of "unfair claim settlement practices". "A plaintiff may establish a claim by showing either that the acts that harmed him were knowingly committed or were engaged in with such frequency as to indicate a general business practice. . . . Discovery aimed at determining the frequency of alleged unfair settlement practices is therefore likely to produce evidence relevant to the action." *Colonial Life & Accident Ins. Co. v. The Superior Court of Los Angeles County, et al.*, 31 Cal.3d 785 (1982).

Information related to job performance, **bonuses**, wage and salary data, and disciplinary matters of persons who handled Plaintiff's disability claim and/or evaluated Plaintiff's disability and medical records is relevant to her claim for breach of the implied covenant of good faith and fair dealing to show that: (1) adjusters and their superiors were incentivized to close plaintiff's claim and engaged in bad faith practices in adjusting Plaintiff's claim, evaluating Plaintiff's disability, or at other times; and (2) Provident's knowledge or approval of such practices. In an insurance bad faith case, the bonus of employees who directly worked on the plaintiff's claim are relevant and discoverable and/or admissible at trial, because it may show that employee compensation is keyed to obtaining low settlements or disputing a claimant's disability, thereby encouraging bad faith practices by adjusters, and other employees. See, e.g., *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803 (2004) [finding evidence concerning compensation and incentives paid by an insurance company to its claims personnel is relevant in a bad faith case.]; *Saldi v. Paul Revere Life*, 224 F.R.D. 169, 184 (E.D. Pa. 2004); *Zilisch v. State Farm Mut. Auto Ins. Co.*, 995 P.2d 276 (Ariz. 2000) [jury could find that salaries and bonuses paid to claims representatives were influenced by how much the representative paid out in claims]. Thus, the requested documents are relevant and discoverable. Additionally, there is a strong protective order in place to protect documents sought by Plaintiff.

Additionally, as previously stated and ordered by this Court in regards to performance reviews:

> "Discovery of relevant personnel records [which would include bonus information] is allowed when there is a showing of 'compelling need.' *See Cecena v. Allstate Ins. Co.*, CO5-03178 JF (HRL), 2006 WL 3302837 (N.D. Cal. Nov. 9, 2006), citing *Bd. of Trustees v. Super. Ct.*, 119 Cal. App.3d 516, 525 . . .

> "Here, Plaintiff has argued that she seeks the performance reviews [and now bonus information] of Defendant's employees who worked on her claim in order to determine whether employee compensation was tied to obtaining low

3

settlements, thus encouraging bad faith practices. This information is relevant to the litigation at hand, and, if true, would be important to Plaintiff's case. There is a protective order in place in this case that will protect against the dissemination of the performance reviews, and protect the employee's privacy.

"Other court have allowed discovery of performance reviews [and bonus information] in similar situations. *Grange Mut. Co. v. Trude*, 151 S.W.3d 803, 815 (Ky. 2004) ("Job performance and disciplinary information could help show that the adjusters and their superiors had engaged in bad faith practices. . . . [and] also show Grange's knowledge or even approval of such practices.); *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 184 (E.D. Pa. 2004) ("Defendants have not identified a less confidential source from which Plaintiff could obtain this material. For the reasons stated above, we find these records to be relevant and have a sufficient nexus to the instant case."). The Court finds that Plaintiffs have shown a compelling need for the documents, and that the employees' privacy rights are adequately protected by the protective order. Accordingly, Defendant's privacy objection is overruled. . . ." See, Order Regarding Discovery Dispute dated July 31, 2013.

This Court's reasoning concerning the discoverability of performance reviews (as stated in this court's July 31, 2013 order, docket no. 29), applies equally to documents reflecting bonus awards.

**Defendant's Position**:

Plaintiff's basis for seeking the amount of bonuses provided to Tina Giacobbi (No. 68), Nichole Cardin (No. 70), Patricia Truchsess (No. 72), and Ronald Freund, M.D. (No. 76) is not supported by the evidence. Plaintiff speculates that she needs the bonus information of these employees because it "may" show that employee compensation is keyed to obtaining low settlements or disputing a claimant's disability. However, the presence of a financial incentive does not mean that a claim's denial was based on that incentive. As reflected in the performance reviews that have been produced, personnel in claims handling positions are evaluated and eligible for incentive compensation only on the basis of their performance outlined in their performance reviews. The performance objectives contained in their performance reviews do not include the outcome of any claim decision or any number of claim decisions, and as such, these outcomes are not permitted as part of their evaluation or award of incentive compensation. (Provident is willing to state this in a supplemental response.) This makes the discovery into the employees' bonuses different from the performance reviews that were previously ordered by the Court.

Plaintiff has not shown a compelling need for the production of the requested confidential and private information of non-party individuals that bears no relationship to her claim. The production of information concerning the compensation of third-party Unum employees would infringe upon their privacy rights. *See Board of Trustees v. Superior Court*, 119 Cal.App.3d 516, 528 (1981); *Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1990); *Harding Lawson Assocs. v. Superior Court*, 10 Cal.App.4th 7, 10 (1992). Provident's employees have a reasonable expectation that their individual personnel files and compensation information will

not be disclosed to third parties.  In fact, Massachusetts has a Privacy Statute (Mass.Gen.L.c214, sec lB), which has been broadly interpreted by Massachusetts case law to protect disclosure of private facts about an employee, that would apply in this case.  Similarly, the California Legislature has implemented a special requirement that employees must be given notice if their personnel records are sought via subpoena so that they have the opportunity to assert their privacy rights.  (*See* California Code of Civil Procedure § 1985.6.)  A protective order would not cure the invasion of the privacy rights of these third party individuals because their private information is still being disseminated in the context of this litigation.

Discovery of personnel records is evaluated on a case-by-case basis.  Evaluation of the facts and circumstances of Plaintiff's disability claim reveal that discovery into financial incentives is not warranted in this case.  Plaintiff's benefits were not terminated based on unsupported opinions of Provident's claims adjusters, but as a result of a thorough investigation, which included, among other items, review of Plaintiff's open-ocean standup paddleboarding activities in light of her doctor's restriction that she could not use her left upper extremities.

Plaintiff's cases are distinguishable.  In *Grange Mut. Co. v. Trude*, 151 S.W.3d 803, 815 (Ky. 2004), a Kentucky case where the insurer was tasked with the writ standard of showing irreparable harm, the court held that wage, salary, and bonus data would shed light on whether compensation was keyed to obtaining low settlements.  Here, Provident has already explained that Tina Giacobbi, Patricia Truchsess, Nichole Cardin, and Ronald Freund, M.D.'s incentive compensation is not dependent on the outcome of any claim decision or any number of claim decisions.  *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169 (E.D.Pa. 2004) is also an out-of-state case, where there was no information given by the insurer (unlike here) regarding the lack of connection between incentive compensation and claims outcomes.  Broad allegations of financial incentives do not compel a finding that this discovery is warranted.

## REQUEST FOR PRODUCTION NO. 79:

A true and correct copy of all of PROVIDENT's guidelines relating or referring or applicable to NaviLink from 2008 to present.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 79:

Provident objects to this request on the grounds that: (1) it is overly broad in time and scope and potentially unduly burdensome given its breadth; (2) it is vague and ambiguous as to "guidelines relating or referring or applicable to NaviLink;" (3) it seeks information that is not relevant to the claims or defenses of any party to this action and it is not reasonably calculated to lead to the discovery of admissible evidence; (4) it seeks confidential, proprietary and/or trade secret business records; and (5) given the breadth of the request and in conjunction with the vague and ambiguous objection, Provident objects to the extent it seeks personal information of a third party who has a right to privacy, as well as violates third parties' privacy rights under California law.

Without waiving the foregoing and general objections, and subject thereto, Provident refers Plaintiff to the CD of the claims manual in effect on March 25, 2009 and all changes up to and including March 20, 2012 that was previously produced which represents the policies and procedures for claims handling in effect during the adjudication of Plaintiff's claim.

**Plaintiff's Position**:

Plaintiff is entitled to obtain documents responsive to Request for Production No. 79 as such documents are relevant and necessary in order to ensure that the NaviLink reports and files related to Dr. Welle's claim were handled according to the proper guidelines.   The Federal Rules of Civil Procedure Rule 26(b) states that, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim." PROVIDENT does not raise any objection based on privilege and the relevance of this request has been previously indicated.

Further, if there are any privacy concerns, the NaviLink guidelines may be produced pursuant to the Protective Order, making any objections as to privacy completely without merit.

Just as an insured in an insurance bad faith action is entitled to the insurer's claims manual, so too is Plaintiff entitled to the NaviLink guidelines. This request is reasonable and PROVIDENT must produce the requested documents.

**Defendant's Position**:

NaviLink is a proprietary computer system.  Plaintiff has not articulated the relevance or need for NaviLink guidelines, which does not pertain to the procedures for adjudicating (i.e. making claims decisions) on disability claims.  Provident has already produced its CD of the claims manual in effect on March 25, 2009 and all changes up to and including March 20, 2012 which represents the policies and procedures for claims handling in effect during the adjudication of Plaintiff's claim.  In fact, the claims manual CD contains policies and procedures pertaining to maintaining claim file documentation in Navilink.  The guidelines Plaintiff seeks to assess whether her claim was properly handled are found in the claims manual, not the Navilink manual.  Plaintiff is simply not entitled to overbroad information on how the Navilink computer system works.  This information is not only irrelevant to her claim, but is confidential and proprietary.   Just as the Court previously denied Plaintiff's request for MiTrak guidelines, it should also deny Plaintiff's request for NaviLink guidelines for the same reasons:

> "Plaintiff seeks Defendant's guidelines relating or referring or applicable to MITRAK (Management Information Tracking Reporting) from 2008 to the present. Plaintiff states that these documents are relevant to whether the tracking reports related to her claim "were handled according to the proper guidelines." Defendant argues that the documents are not relevant, the request is overly broad, vague and ambiguous, and seeks confidential and proprietary business records.
> Plaintiff has not sufficiently articulated a theory of relevance.  Plaintiff has shown no connection between guidelines relating to a tracking reporting system and the merits of the case.  Accordingly, Defendant's objection on the basis of relevance is sustained." (Order, 3:14-22.)

Provident's objections on the production of NaviLink guidelines should be similarly sustained.

DONAHUE & HORROW, LLP

NICHOLE D. PODGURSKI

BURKE, WILLIAMS & SORENSEN, LLP

KEIKO J. KOJIMA



7